# Pittsburgh, Bessemer & Lake Erie Railroad Co., Appellant, *v.* Public Service Commission.

*Railroads—Overhead crossings—Apportionment of cost—Public Service Commission.*

The Public Service Commission in apportioning the cost of a share of an overhead bridge between two railroad companies, cannot be limited to any fixed rule; all the factors which enter into a division of the cost is to be taken into consideration, and carefully examined. If it appears from the evidence, and from the maps, plans and photographs submitted, that the commission arrived at what they believed to be a fair ratio, and after reargument wherein various positions of the railroads are fully discussed, the commission makes a final order, such order will not be reversed on appeal by the Superior Court. Any other division that the court might suggest would be merely an expression of their opinion as to what would be proper, and would be entitled to no greater weight than that of the commission appointed to hear and determine such matters.

In a proceedings to apportion such costs, the commission may consider, but not as determining factors, the number of trains operated by each road, the width of right of way, the fact that one railroad had a single track, and the other a double track, and that one company in order to elevate its tracks and reduce its grade had the bridge raised several feet, necessitating an additional expense.

Argued April 11, 1918.  Appeal, No. 81, April T., 1918, by plaintiff, from order of Public Service Commission, Application Docket, No. 117, 1916, granting certificate of public convenience in case of Pittsburgh, Bessemer & Lake Erie Railroad Company and the Bessemer & Lake Erie Railroad Company v. Public Service Commission. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and WILLIAMS, JJ.  Affirmed.

Petition for certificate of public convenience for the construction of a bridge over Connoquenessing creek in the Borough of Butler on State road route No. 72 with

approaches over the Pittsburgh, Bessemer & Lake Erie Railroad and the Pittsburgh & Western Railroad.

The commission after hearing allowed the certificate, filing the following order:

The Public Service Commission of the Commonwealth of Pennsylvania finds and determines that the construction of the above-mentioned crossings in accordance with the plans and specifications, as approved and on file in this office is necessary and proper for the safety, service, accommodation and convenience of the public and directs that the work in accordance with said plans and specifications shall be done by contract to be awarded after due advertisements to the lowest responsible bidder, except the work of raising the grade of Morton avenue and South Main street south of the south line of the Pittsburgh pike, which work is hereby ordered to be done by the Borough of Butler at its own expense.

The commission hereby determines and finds that said cost including said damages shall be borne by the public service companies, municipal corporations, and the Commonwealth of Pennsylvania in the following portions:

Twenty-six per cent. thereof by the Pittsburgh, Bessemer & Lake Erie Railroad Company, operated and controlled by the Bessemer & Lake Erie Railroad Company.

Eight per cent. thereof by the Pittsburgh & Western Railroad Company, operated and controlled by the Baltimore & Ohio Railroad Company.

Thirty-four per cent. thereof by the Borough of Butler.

Seventeen per cent. thereof by the County of Butler.

Fifteen per cent. thereof by the Commonwealth of Pennsylvania.

The amount of the compensation for damages which the owners of the several pieces of adjacent property taken, injured or destroyed may sustain by said construction, will be ascertained by the commission after the completion of the construction of the viaduct.

After the contract for the construction shall have been let in accordance with this order, the proportional pay-

ments of the several parties above-mentioned shall be made to the said contractor upon monthly estimates submitted by him and approved by the chief of the Bureau of Engineering and the chief of the Bureau of Accounts and Statistics of this commission.

Public advertisements for bids for the construction in accordance with this determination shall be made once a week for at least two weeks in newspapers published in the Cities of Butler, Harrisburg, Pittsburgh and Philadelphia, and also in two trade journals.

*Error assigned* was the order of the commission.

*T. C. Whiteman,* of *Templeton & Whiteman,* with him *Reed, Smith, Shaw & Beal,* for appellants.—The danger to the public is partly a question of the public's ability to see the danger.

Width of right of way is not, and should not be, the basis of assessment: Wilkes-Barre v. Lehigh Valley R. R. Co., 2 P. C. R. 278.

The danger is a case largely of the number of trains passing over the crossing, as is the inconvenience to the railroads.

The liability to damages is closely connected with the question of danger, for obstructed line of sight and the number of trains would increase the liability to accident and necessarily the liability to large damages.

*R. P. Scott,* with him *W. B. Linn* and *H. B. Gill,* for appellees.

OPINION BY KEPHART, J., January 3, 1919:

The State Highway Department petitioned the Public Service Commission to issue a certificate of public convenience approving the construction of a bridge in Butler which would span the Connoquenessing creek, Pittsburgh, Bessemer & Lake Erie Railroad, and the Pittsburgh & Western Railroad, and apportion the cost thereof among the railroad companies, the municipal

corporation and the Commonwealth. This bridge would abolish the grade crossings in the borough over the railroads. The advisability of making this improvement is not questioned. The commission made an order apportioning the cost, thirty-four per cent. to be paid by the borough, thirty-two per cent. by the county and State, and, the part here in controversy, twenty-six per cent. by the Pittsburgh, Bessemer & Lake Erie Railroad, and eight per cent. by the Pittsburgh & Western Railroad. The Pittsburgh, Bessemer & Lake Erie Railroad, controlled by the Bessemer & Lake Erie Railroad, objected to this apportionment and alleged that it is unreasonable, without evidence or against the manifest weight of the evidence. They do not object to the part to be paid by the borough, county and State, but they do say that the disparity in the respective assessments between the railroads is unfair. The appellant's right-of-way is eighty-two feet at this point, and the Pittsburgh & Western Railroad's, controlled by the Baltimore & Ohio Railroad, hereinafter termed the appellee, is forty feet. The appellant is a double track railroad, conducting a through business and passes on an average of forty-four trains in twenty-four hours over the crossing to be abolished. The appellee is a single track railroad, passing thirty-seven trains in the same length of time over the crossing, not including switching movements. Between Connoquenessing creek and the appellee's right-of-way there is a tract of land, approximately two acres, on which is located some factories. The bridge will entirely abolish all grade travel over the appellant's road and will abolish grade travel over the appellee's road with the exception of that incident to these factories, which may be considerable. A better opportunity is at present afforded pedestrians and drivers of vehicular traffic to observe the approach of trains along the appellant's system by reason of its width of right-of-way than at the appellee's grade crossing where buildings obstruct the view. The commission had the benefit of the testimony of witnesses,

engineers and the commission's chief engineer, officials of the Commonwealth, plans, photographs, and the conferences between the respective parties. It also appeared that the appellant, in order to elevate its tracks and reduce its grade had the bridge raised seven feet, necessitating an additional expense. The commission, in the apportionment of the cost, cannot be limited to any fixed rule; all the factors which enter into a division of costs should be taken into consideration and carefully examined. It would be almost impossible for this court, exercising an appellate jurisdiction, to go into the minute details of all the questions presented in such issues and sit as an administrative body to determine what would be just. From the evidence submitted, the commission arrived at what they believed to be a fair ratio and after the reargument, wherein the various positions of the railroad were fully discussed, the commission made the final order, part of which is now complained of. Any other division that we might suggest would be merely an expression of our opinion as to what would be proper and it is entitled to no greater weight than that of the commission's, appointed to hear and determine these matters. "It would be a substitution of our judgment for that of the commission's": Ohio Valley Water Co. v. Public Service Commission, 260 Pa. 310, and of course this we cannot do.

The number of trains operated over a given road is not always the determining factor. A company may be in almost constant use of a grade crossing by shifting, and while it may be an annoyance to the traveling public, it is not dangerous in that the movement of the cars is usually very slow and may be stopped within a few feet. A single track railroad is not as dangerous at a grade crossing as a double track railroad. The pedestrian or driver knows when a train passes on a single track road he may immediately cross, but on a double track system there is always danger of trains coming in the opposite direction, or, as frequently happens, trains moving the

same direction on both tracks of the double track system. The commission, no doubt, considered the dangers, inconveniences and liability for damages existing at grade crossings as being factors weighing in the ratio of cost. The amount of right-of-way does not necessarily determine the question, although it has a strong bearing on the situation. It may be possible that a railroad having a very small amount of business and with but one track would own a considerable width of right-of-way at one or more points. If the policy of the company is to adopt over any portion of its line a width of right-of-way which could be called extensive, that is, beyond that ordinarily used, that is a factor which should be taken into consideration in assessing the cost, but if the right-of-way happens to be wide only at this particular point, and for no special purpose, it must be seen that such additional width adds no material value to the company's property as such. When located at a grade crossing it is of benefit only as it tends to reduce damages for grade crossing accidents because pedestrians and drivers may see a greater distance as they approach the crossing. But all of these questions and many others pertinent to the inquiry were before the commission by the maps, plans, photographs and testimony. There is no good reason for this court to declare such an order unreasonable or not in conformity to law.

The order of the commission is affirmed at the cost of the appellant.