Tarentum Borough, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued April 18, 1952. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*Howard J. Hazlett,* with him *Edward J. I. Gannon* and *Hazlett, Gannon & Walter,* for Borough, appellant.

*Albert E. Luttrell,* Assistant Counsel, with him *Lloyd S. Benjamin,* Acting Counsel, for Public Utility Commission, appellee.

*Wallace D. Stewart,* with him *Samuel W. Pringle, Eugene E. Anderson, Jr.,* and *Dalzell, Pringle, Bredin & Martin,* for Railroad, intervening appellee.

OPINION BY HIRT, J., July 17, 1952:

The construction, by the Highway Department of the Commonwealth, of a High Level Toll Bridge across the Allegheny River connecting New Kensington on the south with the Borough of Tarentum, gave rise to the present proceeding. To some extent the approaches to the bridge from intersecting streets have aggravated Tarentum's existing traffic problems. Seventh Avenue running eastwardly to its intersection with Ross Street, the north terminus of the bridge, is a part of State Route 28; a much traveled through highway serving the Allegheny River Valley north of Pittsburgh. Parallel with Seventh Avenue and along the south line of Sixth Avenue, the Conemaugh Division of the Pennsylvania Railroad runs through the borough. Prior to the changes authorized in this proceeding, there was no through highway south of the railroad for east and west traffic. Bull Creek, west of the approach to the toll bridge flows south through the borough into Allegheny River. Bull Creek and Ross Street running north and south divided the borough into two sections known as East and West Tarentum. The route of local traffic from West Tarentum to the business section in the east section of the borough has been along East Sixth Avenue to Wood Street, and thence southwardly in Wood Street across the two main line tracks and one switching track of the Pennsylvania Railroad at grade.

In accordance with a definite plan for the solution of its traffic problems the borough in this proceeding petitioned the Public Utility Commission for an order abolishing the Wood Street crossing and for leave to extend Fourth Avenue westwardly along the southerly

right of way of the railroad for a distance of about 1,000 feet west of Ross Street. In the application the borough also sought an order directing the railroad to construct a crossing of its tracks at grade connecting Fourth Avenue as extended with a southerly extension of Center Street which runs northwardly from the railroad intersecting West Seventh Street as well as other east and west traffic routes. The over-all objective of the present proceeding was the separation of through traffic, by means of the toll bridge and Route 28, from local traffic between East and West Tarentum and to make it more convenient for the residents of the borough to travel to and from their work in the borough as well as in various neighboring industrial communities. The proposal of the borough included the improvement of East Sixth Avenue and the placement of barricades, permanently closing the Wood Street crossing; the building of a bridge in Fourth Avenue over Bull Creek, and the construction of a grade crossing in Fourth Avenue, over an industrial siding about 200 feet west of Ross Street. The borough undertook to pay the cost of the entire improvement exclusive of the railroad crossing at Center Street. The total estimated cost of the improvements which the borough assumed was $278,000. The Commission after full hearing authorized the improvement as prayed for and ordered the Railroad to construct the grade crossing at Center Street to connect with the Fourth Avenue extension. The estimated cost of establishing the railroad crossing, including the relocation of facilities, raising the siding track, installing flashing-light signals, short-arm gates and auxilliary protection devices, together with paving, amounted to $55,526. The Borough of Tarentum was ordered to pay the cost of the work to be performed by the railroad in addition to the other costs assumed, and the Commission directed the borough to deposit the sum of $60,000 in escrow,

to insure payment to the railroad for the work of constructing the crossing when completed.

The questions in this appeal relate solely to the grade crossing at Center Street. Appellant borough contends that the whole cost of construction of the crossing should have been put on the railroad and that in any event there is no legal authority for requiring the borough to make a deposit in escrow to insure payment for the work.

From the above cursory review of the controlling facts it seems clear that the changes sought by the borough were solely in its interest. There is no evidence that the improvement will benefit the railroad in any material respect. The upgrade of the approach to the Wood Street crossing was approximately 14 degrees but it was not inherently dangerous on that account and there is no evidence of a single accident at the crossing. The abolition of the crossing at Wood Street was for the benefit of the Borough and not the railroad. By relocation of the railroad crossing at Center Street, 1,600 feet west of the former crossing at Wood Street, local traffic will be diverted from Route 28, and the extension of Fourth Street under the approach to the toll bridge will effectively separate local from through traffic, thus attaining the objective of the improvement as a whole.

Section 411 of the Act of May 28, 1937, P. L. 1053, 66 PS §1181, provides that the expense of the construction or relocation, of any crossing "shall be borne and paid, . . . by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the Commission may, . . . determine, . . ." The Public Utility Commission succeeded to the powers of the Public Service Commission. *Penna. R. R. Co. v. P. U. C.*, 136 Pa. Superior Ct. 1, 7 A. 2d 86. The state in the exercise of its police power, has entrusted to the Public Utility Commission . . . broad

powers in respect of the crossing of facilities of utilities and particularly of the crossing of highways and railroads. *Penna. R. R. Co. v. P. U. C.,* supra. We have repeatedly affirmed the principle. Cf. *Wilkes-Barre et al. v. Pa. P. U. C.,* 164 Pa. Superior Ct. 210, 63 A. 2d 452; *Pa. R. R. Co. v. Pa. P. U. C.,* 154 Pa. Superior Ct. 86, 35 A. 2d 588. The Commission in apportioning the cost of a change in the location or the character of a railroad crossing, cannot be limited to any fixed rule; all factors are to be taken into consideration. *Pittsburgh B. & L. E. R. R. Co. v. Pub. Ser. Com.,* 71 Pa. Superior Ct. 15, 19. The duty of deciding how the cost of relocating a crossing shall be apportioned is on the Commission and its order in the exercise of administrative discretion will not be reversed if reasonable and in conformity with law. *Lancaster Co. v. Pub. Ser. Com.,* 77 Pa. Superior Ct. 495, 503; *Conshohocken Boro. v. Pa. P. U. C.,* 135 Pa. Superior Ct. 295, 5 A. 2d 590. In the present case, the fact that the entire construction cost of the railway crossing at grade was imposed on the Borough does not affect the validity of the order. Certainly the whole cost of relocating a crossing may be placed on a municipality when ordered by the Commission at the request of the municipality and for its sole benefit. Here, actually however, there is an apportionment of financial obligations to this extent: the duty to maintain the crossing was imposed on the railroad at an annual estimated cost of $2,053.

So much of the order of the Commission, imposing the ultimate cost of constructing the Center Street crossing on the Borough of Tarentum in addition to the construction costs assumed by the borough, is in accordance with the law and is supported by the evidence; to that extent, therefore, the order must be affirmed. Amendment of July 3, 1941, P. L. 267, 66 PS §1437.

The Commission however exceeded its authority, under the law, in ordering the borough to deposit $60,-000 in escrow against the costs of constructing the crossing. The Public Utility Law does not empower the Commission to order such deposit and the order must be vacated in that respect. The powers of the Council of a Borough are set forth in the amendment of The Borough Code of July 10, 1947, P. L. 1621, by the Act of July 19, 1951, P. L. 1026, 53 PS §12895. The power to deposit borough funds for the purposes intended by the present order, is not within the authority conferred. The result is that the Commission could not require the deposit and the borough could not make a deposit for that purpose under the law. *Com. ex rel. Schnader v. Ritter,* 313 Pa. 526, 169 A. 569, on which appellee relies, does not support the order as to the deposit. It does however point the way to mandamus as the proper remedy in the event that the borough should refuse to repay the railroad for the construction costs of the crossing.

As modified, by eliminating the provision for the escrow deposit by the Borough of Tarentum, the order is affirmed.