Department of Highways of Commonwealth
of Pennsylvania, Appellant, *v*. Pennsylvania
Public Utility Commission et al.

Argued March 9, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Nelson M. Galloway,* Assistant Attorney General, with him *Michael J. Stack, Jr.,* Deputy Attorney General, *John R. Rezzolla, Jr.,* Chief Counsel, and *Anne X. Alpern,* Attorney General, for Department of Highways, appellant.

*Miles Warner,* Assistant Counsel, with him *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*W. Russell Hoerner,* with him *Paul H. Rhoads, Russell G. Weidner,* and *Ruth, Weidner, Woerle & Yoder,* and *Rhoads, Sinon & Reader,* for borough, intervening appellee.

OPINION BY GUNTHER, J., June 10, 1959:

The Department of Highways has appealed from the order of the Pennsylvania Public Utility Commission wherein the commission has determined and ordered a certain cost allocation for water mains required to be relocated in connection with the construction of a highway.

The Department of Highways in 1956 was in the process of constructing a portion of State Highway

4

Route 285 (U. S. Route 22) as a limited-access high-way in Windsor Township and the Borough of Hamburg, Berks County. This highway improvement was undertaken with the aid of Federal funds. In connection with said construction in Windsor Township, a new bridge was constructed to carry the new limited-access highway over and above Windsor Township Road No. 808 as relocated. Two water mains owned by the Borough of Hamburg had been located within the shoulders of the old road at a depth of approximately three and a half feet. One, an 8-inch water line was located in the westerly shoulder and the other, a 12-inch line was located in the easterly shoulder of said road. In connection with the relocation of this road, the Department of Highways, through its contractor, constructed 1,523 feet of 8-inch water line in the westerly shoulder of the relocated road, and 1,536 feet of 12-inch water line in the easterly shoulder. New pipe was used throughout and the existing mains were abandoned in place by the Department. The cost of such water main construction was $33,334.53.

On February 21, 1957, the Department of Highways filed a petition with the commission, pursuant to the authority contained in section 412.1 of the State Highway Law, 36 P.S. 670-412.1, requesting the commission to determine the cost of such construction to be borne by each party. The petition further stated that the Department was of the opinion that the costs should be shared by it and the Borough of Hamburg but that the Department and the Borough could not agree on a division of costs. On May 27, 1957, a hearing was held at which only the Department and the Borough appeared with counsel. After the testimony was closed and while the commission was awaiting the filing of briefs, the Department, on October 4, 1957, filed a petition for further hearing, offering to prove that the

Borough of Hamburg was financially able to assume the costs involved in the relocation of the water mains. This petition was denied on December 17, 1957, and on May 27, 1958, the commission entered its order imposing $667.00 of the costs on the Borough and the balance on the Department. From this order, an appeal was filed by the Department. On July 25, 1958, we allowed the Borough of Hamburg to intervene, and on February 24, 1959, the Borough filed a motion to dismiss the appeal of the Department for want of jurisdiction.

Basically, this appeal raises three questions for our determination: (a) Do we have jurisdiction to adjudicate this appeal on the merits? (b) Was the order of the commission in making the allocation of costs capricious, and (c) did the commission err in refusing the Department's petition for further hearing?

The Borough of Hamburg urges its motion to dismiss on the grounds that section 412.1 of the State Highway Law, 36 P.S. 670-412.1, is, in essence an arbitration statute and as such is final and binding upon the parties to the arbitration; and that the section of the State Highway Law, supra, has authorized no appeal to us from the determination of the commission. While it may be conceded, speaking broadly, that the purpose behind the legislative enactment was to resolve the question of cost allocation between two contending parties, we cannot agree that such finding, *ipso facto* becomes final and binding regardless of the reasons for such finding. Had the legislature intended such a result, it would have said so plainly and unmistakably. But it did not, and the only way this matter may be brought under the jurisdiction of the commission is by petition instituted by the Department of Highways. The statute does not authorize any city, borough, incorporated town, township or municipality

to institute such proceeding before the commission. The selection of the commission for the determination of the costs to be borne by each party is, therefore, unilateral and lacking in the usual prerequisite of an arbitration proceeding.

Section 412.1 of the Act does not specifically mention the right of appeal from the determination made by the commission. But we do not consider the neglect to so provide as controlling. A review of statutory provisions relating to the Pennsylvania Public Utility Commission indicates that the legislature has contemplated that the commission might exercise jurisdiction founded in statutes other than the Public Utility Law itself. See Act of 1937, March 31, P. L. 160, sections 7, 9, 10, 11 and 12, 66 P.S. sections 458, 460, 461, 462 and 463. Section 10, for example, provides that the commission "shall exercise the powers and perform the duties exercised and performed prior to the effective date of this act by The Public Service Commission of the Commonwealth of Pennsylvania, and any powers and duties subsequently vested in and imposed upon the Pennsylvania Public Utility Commission by law." Section 1101 of the Public Utility Law, 66 P.S. section 1431 (a), provides that "Within thirty days after the service of any order by the commission, . . . any party to the proceedings affected thereby may appeal therefrom to the Superior Court. Such court is hereby clothed with exclusive jurisdiction throughout the Commonwealth for the purpose of hearing and determining any and all such appeals: . . ." Section 1013 of the Public Utility Law, 66 P.S. section 1403, provides that "The commission may, in addition to the hearings specially provided by *this act,* conduct such other hearings as may be required in the administration of the powers and duties conferred upon it by *this act and by other acts relating to public utilities . . .*" (Emphasis supplied.) It is pertinent to note

that in section 1101, supra, the legislature does not re-fer to "any order made under the provisions of this act," but refers to *any order* by the commission, except as specifically excluded therein.

In *Pittsburgh v. Pennsylvania Public Utility Commission*, 157 Pa. Superior Ct. 595, 43 A. 2d 348, we indicated that "An order from which an appeal to this court may be taken is one that has been issued by the commission after its jurisdiction has been legally invoked." Just recently (May 18, 1959 and as yet unreported)* the Supreme Court, speaking through Chief Justice JONES in *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission et al.,* said: "The Superior Court's appellate jurisdiction rests exclusively in express statutory authorization. Thus, it is, that orders of the Public Utility Commission are appealable to the Superior Court. Section 1101 of the Act of May 28, 1937, P. L. 1053, 66 P.S. section 1431-(a), provides that 'Within thirty days after the service of any order by the commission . . . *any party to the proceedings affected thereby* may appeal therefrom to the Superior Court.' (Emphasis supplied)." In view of the above, we deem an extended discussion on this phase of the appeal unnecessary and conclude that not only the appellant but also the appellee is entitled to a review of the commission's order and that we have jurisdiction to decide the case on the merits.

We turn now to the second question raised on this appeal. Our scope of review from orders of the commission is limited by section 1107 of the Public Utility Law of 1937, as amended, 66 P.S. section 1437. As we have frequently stated, an order of the commission may not be set aside except for error of law or lack of evidence to support the finding, determination or order, or a violation of constitutional rights. *Follmer Truck-*

---

* Reporter's Note: Since reported at 396 Pa. 34, 152 A. 2d 422.

*ing Company v. Pennsylvania Public Utility Commission*, 189 Pa. Superior Ct. 204, 150 A. 2d 163; *Modern Transfer Company v. Pennsylvania Public Utility Commission*, 179 Pa. Superior Ct. 46, 115 A. 2d 887; *Leaman Transportation Company v. Pennsylvania Public Utility Commission*, 175 Pa. Superior Ct. 553, 106 A. 2d 901.

We have difficulty with the contentions of the appellant in trying to upset the order of the commission. The basic contention advanced is to the effect that the commission has no authority in law to establish *any standard* for the determination of costs to be borne by the parties other than the standard decided upon by the Secretary of Highways. As a corollary to this proposition, appellant contends that the commission's function is only to determine what the financial ability of the municipality or authority is, and to order the sharing of costs accordingly, and that this is the only constitutional application of section 412.1 of the State Highway Law so far as the commission's functions thereunder are concerned. In this connection, several pertinent observations must be made: (1) If the basic contention of the Department is sound, the corollary proposition must fail because the commission would be accepting a standard which it cannot do. (2) If the sole function of the commission is to accept the figure set by the Department and it cannot exercise independent judgment, there was no reason whatever in authorizing the submission of a controversy to the commission. (3) We must assume that the legislature did not intend a result which is absurd or unreasonable and that it intended the whole of section 412.1 of the Act to be effective and certain. Statutory Construction Act, section 52, 46 P.S. section 552. (4) We are certain that the legislature did not intend the commission to become merely a rubber stamp for the Depart-

ment of Highways. (5) While the Department suggested that 50% of the cost would be a fair allocation of costs to each side, the record discloses no standard or basis in so allocating costs.

The commission determined, as a basis for the allocation of costs, that the Borough should pay for the cost of reconstruction of its water mains only to the extent of the increased life expectancy of the mains extending across the right of way of the limited-access highway. The evidence disclosed that the Borough of Hamburg did not benefit to an appreciable extent from the relocation of its lines. It originally had two lines and presently has two lines relocated. There is nothing in the record to indicate that the Borough was dissatisfied with its water mains. The mains were rendering satisfactory service. The new mains were cast-iron pipes as the old ones, same size, no more accessible for repairs or replacement, and generally offered the same service as the old mains. The commission, however, determined that the Borough did benefit in one respect. If the water mains had not been relocated, they would have been buried under more than 8 feet of soil for a distance of about 140 feet across the new highway whereas the former water mains would have bisected the new right of way and, therefore, would not have been accessible for repair or replacement. In essence, the Borough's share of relocation costs were determined by the commission based upon the several factors. The width of the right of way was considered in connection with the length of the water mains relocated. The cost of relocation was considered in relation to the accrued depreciation percentage. The 1,-523 lineal feet of 8-inch water main were relocated at a cost in material of $6,073.39. The 1,536 lineal feet of 12-inch water main were relocated at a cost in material of $10,302.15. The total labor and equipment

cost of relocating both mains was $16,958.99. The width of the limited access highway's right of way was 120 feet. The observed accrued depreciation of the 8-inch water main was 40% and that of the 12-inch main was 15% as determined from physical inspection by a qualified engineer. The width of the right of way divided by the length of the water mains relocated, multiplied by the cost of the relocation of the water mains, multiplied by the accrued depreciation percentage equalled the total cost to be allocated to the Borough. Under this formula, the Borough's share was fixed at $667.00.

We have held that the relative benefits which accrued to the parties are proper factors to be considered by the commission. *Tarentum Borough v. Pennsylvania Public Utility Commission*, 171 Pa. Superior Ct. 156, 90 A. 2d 853; *Conshohocken Borough v. Pennsylvania Public Utility Commission*, 135 Pa. Superior Ct. 295, 5 A. 2d 590. Since section 412.1 of the enactment does not spell out on what basis to allocate the costs to each party to these proceedings, we cannot say that the commission, using a basis which had been approved by us heretofore, has acted capriciously, erroneously or in violation of any constitutional provision. In our view, the evidence supported the commission's order. We believe that if more definite standards should be applied, the legislature should spell them out. We conclude, therefore, that the commission's allocation of costs was fair and reasonable under the circumstances.

Finally, it is contended that the commission erred in refusing the Department's petition for further hearing. The Department of Highways offered to prove that the Borough of Hamburg was able, financially, to assume the costs incurred in the relocation of the water mains. It is here argued that the refusal to grant the rehearing constituted a clear abuse of discretion in

view of the expectation of the Department that the Borough would submit proof of its financial condition and, having failed or refused to do so, the Department was now ready and willing to furnish such evidence. Under the circumstances we find no abuse of discretion on the part of the commission. *Scott Township v. Pennsylvania Public Utility Commission,* 188 Pa. Superior Ct. 174, 146 A. 2d 617. We fail to see, in the absence of some specific statutory provision authorizing such factor to be considered relevant or determinative, how the financial ability to pay, in a litigation such as here involved, would control or be determinative of the issue on allocation. Counsel for the Department has cited no authority to us for this position, and we have been unable to find such authority. Nor do we believe that the legislature contemplated that the commission, in making allocation of costs, enter into complicated questions of municipal taxation. In any event, the petition does not set forth that this evidence was not available and could not have been fully presented at the time of the hearing. We see no abuse in this regard.

The motion to dismiss for want of jurisdiction is denied and the order of the commission is affirmed.

RHODES, P. J., concurs in the result.

