## Erie Lackawanna Railway Company *v.* Pennsylvania Public Utility Commission.

Argued April 13, 1971, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MANDERINO, MENCER and ROGERS.

*Cody H. Brooks,* with him *Warren, Hill, Henkel-
man & McMenamin,* for appellant.

*Dominic J. Ferraro,* Assistant Counsel, with him
*Edward Munce,* Acting Counsel, for appellee.

OPINION BY JUDGE ROGERS, June 1, 1971:

This is an appeal from an order of the Public Util-
ity Commission allocating the costs of abolishing eigh-
teen rail-highway crossings. The appellant, Erie Lacka-
wanna Railway Company, contends that the Commis-

sion's order is erroneous in two respects: first, in imposing on it the cost of relocating the facilities of other utilities and of establishing and maintaining necessary detours at all of the crossings, and second, in imposing on it the full cost of abolishing three of the four crossings which are not at grade.

By order of the Interstate Commerce Commission, the Railway Company was authorized to abandon a portion of its line of railway in Lackawanna and Wayne Counties. The portion of line in question crossed fourteen public highways at grade, two above grade and two below grade. The Railway Company applied to the Public Utility Commission for approval of the abolition of these crossings. At the P.U.C. hearings, the Railway Company agreed to pay the cost involved in the grade crossing removals and restoration. As to one of the non-grade crossings, the Department of Transportation of the Commonwealth agreed to perform the work required to abolish the crossing at an expense of about $100,000 and the Railway Company agreed to contribute $40,000 toward this cost. The cost of abolishing the three remaining highway-rail separations, estimated at about $55,000, was imposed on the Railway Company. Of this total, about $50,000 related to two crossings of state highways and about $5,000 related to a small railway bridge over a township road.[1]

The record is silent as to the cost of relocating the facilities of other utilities or of establishing and maintaining detours. Indeed, there appear to be no other utilities affected and there is evidence that at least at the grade crossings no detours will be necessary. In any case, without evidence that the facilities of other utilities were required to be relocated or that detours

---

[1] The township, although served, did not appear at the Commission hearings.

were required to be established, and absent an estimate of cost of doing either, if necessary, we have no basis for concluding that the Commission's order was unreasonable in this regard.

As concerning the three bridges ordered abolished at the cost of appellant, we observe that the two bridges providing the crossings of state highways are owned and have been maintained by the Railway Company. We have no doubt that the Railway Company also maintained the 17-foot long bridge crossing the township road, although this fact does not appear of record. The Railway Company was also obliged to maintain the largest structure on the line, agreed to be removed by the Department of Transportation at a cost of $100,-000, with reimbursement of $40,000 by the Railway Company.

The Public Utility Law, *infra*, Article XI, Section 1107, as amended, 66 P.S. 1437, provides that we may not "vacate or set aside the Commission's order, either in whole, or in part, except for error of law or lack of evidence to support the finding, determination, or order of the Commission, or violation of constitutional rights." We may not exercise our independent judgment on the record. *Clemmer v. Pennsylvania Public Utility Commission*, 207 Pa. Super. 388, 217 A. 2d 800 (1966). If there is substantial evidence in support of the order of the Commission, we may not set it aside. *Modern Transfer Company v. Pennsylvania Public Utility Commission*, 182 Pa. Super. 110, 125 A. 2d 463 (1956). Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion. *Pittsburgh Railways Company v. Pennsylvania Public Utility Commission*, 198 Pa. Super. 415, 182 A. 2d 80 (1962).

The order here subject to review was imposed under Section 411(a) of the Public Utility Law, 1937, May

28, P. L. 1053, Art. IV, 66 P.S. 1181(a) which reads in part, as follows: ". . . the cost of . . . abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid . . . by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the Commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties." The legislature has thus given the Commission extensive power in the allocation costs. It is "not limited to any fixed rule, but all factors entering into a division of the costs should be taken into consideration and carefully examined. Pittsburgh, Bessemer and Lake Erie Railroad Company v. Public Service Commission, 71 Pa. Superior Ct. 15, 19; Tarentum Borough v. Pennsylvania Public Utility Commission, 171 Pa. Superior Ct. 156, 161, 90 A. 2d 853. Such order of the Commission as to costs, made in the exercise of its administrative discretion, will not be reversed if reasonable and in conformity with law. Tarentum Borough v. Public Utility Commission, supra, 171 Pa. Superior Ct. 156, 161, 90 A. 2d 853." *De partment of Highways v. Pennsylvania Public Utility Commission,* 179 Pa. 376, 384, 116 A. 2d 855, 859 (1955).

The appellant contends that the Commission's order is unreasonable because it imposed no costs on the public with respect to three of the bridges, although the public has benefited from their abolition. The fallacy of this argument lies in the fact that this proceeding is on appellant's application for the abolition not of the three bridges referred to, but of four bridges and fourteen grade crossings. There was here one application, one hearing and one order. The Commission considered, among other matters, the facts that the appel-

lant sought to abolish these crossings, that it will be relieved of maintaining all of the bridges and that the Commonwealth agreed to assume $60,000 of the total of $155,000 in costs necessary to remove the bridges. In *Department of Highways v. Public Utility Commission, supra,* 179 Pa. Super. 376, 116 A. 2d 855 (1955), it was held that the Commission could recognize that Federal funds were to be used in a highway project and could consider the conditions that might be applicable to the use of such funds.

We have carefully reviewed this record and concluded that the allocation of the costs is supported by the evidence. We have not been persuaded that the order was unjust or unreasonable.

Order affirmed.

---

DISSENTING OPINION BY JUDGE MANDERINO:

I dissent. This court is again faced with an order of the Public Utility Commission allocating costs for the abolition of rail-highway crossings. This case involves eighteen crossings—fourteen at grade, two above grade, and two below grade. The Erie Lackawanna Railway Company has agreed to pay the costs of abolishing the fourteen crossings at grade. However, the Railway Company objects to the portion of the P.U.C. order directing the Company to pay the total costs of abolishing the two crossings below grade and one of the crossings above grade. The costs of abolishing the other crossing above grade are to be shared by the Railway Company and the Department of Transportation.

Once again the Public Utility Commission has ordered an allocation of expenses without the benefit of any standards which should be consistently applied. Without the existence of standards formulated and applied by the P.U.C. in all similar cases, meaningful

judicial review is impossible. The Erie Lackawanna Railway Company is entitled to know why they have been mandated to bear a burden in this case which, in other similar cases, has been borne by municipalities. The P.U.C. must establish proper allocation standards to be applied consistently from case to case. Until such standards are formulated and applied, orders of the P.U.C. relating to allocation are made on an ad hoc basic and are, at most, arbitrary.

Recently, this court had before it a similar order of the Public Utility Commission (*Pennsylvania Public Utility Commission v. Township of Upper Merion et al.*, filed April 29, 1971). In the *Upper Merion* case the transportation utility was ordered to pay the smaller portion of the costs. In this case the transportation utility was ordered to pay the costs. In both of these cases, however, judicial review is impossible because standards for allocation of costs have not been established by the Public Utility Commission. Without such standards the court cannot determine from case to case whether cost allocations are reasonable or arbitrary.

I would reverse the order of the Public Utility Commission and remand this case to the Commission directing new expense allocations to be consistently applied to each case.