Lehigh & New England Railroad Company, Appellant, *v.* Public Service Commission.

Argued November 17, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*George P. Orlady,* with him *William Jay Turner,* for appellant.

*Harry H. Frank,* with him *John C. Kelly, Samuel Graff Miller* and *Richard J. Beamish,* for appellee.

OPINION BY RHODES, J., April 16, 1937:

This case originated in a petition filed with the Public Service Commission wherein Palmerton Business Men's Association, the Palmerton Board of Trade, and Robert Mader Post, No. 269, American Legion of Palmerton, were complainants, and the Lehigh and New England Railroad Company, the Department of High-

ways, Lehigh Township (Northampton County), and the County of Northampton were respondents. The complaint averred that the Lehigh and New England Railroad Company maintains an overhead bridge at Lehigh Gap, Northampton County, Pa., upon which the track of the railroad company is carried over state highway route No. 471, and that the underpass is dangerous and inadequate and should be reconstructed or altered for the safety, accommodation, and convenience of the public.

The answer of the Lehigh and New England Railroad Company denied that the underpass was dangerous, and averred that the same had been constructed in accordance with an order of the Court of Common Pleas of Northampton County, and that it had no objection to the reconstruction of said underpass in any manner that might be desired by the Department of Highways provided that no part of the expense incident thereto should be allocated to the respondent.

Hearings were held and testimony taken. The commission found and determined that the crossing of state highway route No. 471 under the grade of the track of the respondent at the point in question was inadequate and dangerous, and that the same should be reconstructed and altered, in accordance with the general plans submitted by the Department of Highways, for the safety, accommodation, and convenience of the public. The commission accepted respondent's estimate of $49,769 as to the cost of the bridge structure, and the estimate of $33,562.36 of the Department of Highways as to the cost of the road work, making a total cost of $83,331.36.

The commission's order directed that the improvement be made in accordance with the plan of the Department of Highways; that the respondent furnish all materials and do all the work necessary to complete the construction of the substructure and superstructure

of the new bridge; that the Department of Highways furnish all materials and do all work necessary in accordance with its plan for the road work. It was further ordered by the commission that respondent pay the Department of Highways 40 per cent of the actual cost of materials furnished and work done by the department in accordance with the order; that the Department of Highways pay the respondent 40 per cent of the actual cost of materials furnished and work done by the respondent; and that the County of Northampton pay the respondent 20 per cent of the actual cost of materials furnished and work done by it, and pay the Department of Highways 20 per cent of the actual cost of materials furnished and work done by it.

From the order of the commission the Lehigh and New England Railroad Company, the respondent, appealed.

Appellant contends that the order of the commission is unjust and unreasonable. Cost to the appellant will be $33,332.54, or 40 per cent of the estimated cost of the new bridge carrying the railroad over the grade of the highway, and of the cost of the highway improvement work.

The appellant urges upon us that the order of the commission is unreasonable: (1) Because the new bridge is required primarily, if not solely, on account of the increase in through highway traffic, the speed thereof, the grade of the highway, and other physical conditions over which appellant has no control and which it did not create; (2) that the proposed construction will not benefit appellant to any extent whatsoever.

The present underpass was constructed about 1911. The highway approaches the underpass on the southeast side thereof at a grade, having a maximum of 8 per cent, for a distance of about 2,000 feet. The highway passes under the tracks of the appellant at right angles. The clearance of the underpass is 11 feet and 9

inches. It is impossible for two large vehicles to pass in the underpass at the same time; two ordinary automobiles can pass providing the drivers exert considerable caution. The underpass has been the scene of numerous fatal accidents. It is located on state highway route No. 471, a distance of 200 feet from the intersection of route No. 175, and 1 mile distant from Palmerton, Carbon County. The report of the commission describes the new underpass as follows: "The underpass, as proposed by this plan [Department of Highways' plan adopted by commission], consists of a single span, solid floor, through plate girder superstructure, supported by concrete masonry abutments, provides a clear span of sufficient width to accommodate a 34-foot roadway and one five foot sidewalk along the south side thereof. The plan provides a minimum vertical clearance of 14 feet over the roadway. A material improvement in the clear sight distances through the underpass is obtained by reduction of curvature of the highway approaches, and by the construction and widening of the paving on the altered portion of the highway approaches, to the general width of 30 feet. The plan also provides for the installation of adequate facilities for effective drainage of the highway, and for lowering the slope grades in the cut in which the approaches are located, for the purpose of overcoming the present tendency of this material to slide down upon the highway."

Section 12, article 5, of the Public Service Company Law of July 26, 1913, P. L. 1374, as amended by Act of July 17, 1917, P. L. 1025, §1 (66 PS §§571-577), confers jurisdiction in such cases as we have before us on the Public Service Commission. It provides (66 PS §571) that the commission "shall have exclusive power to determine, order, and prescribe, in accordance with plans and specifications to be approved by it, the just and reasonable manner, including the particular point of crossing ...... in which any public highway may be

constructed across the tracks or other facilities of any railroad corporation or street railway corporation at grade, or above or below grade ...... to order any crossing aforesaid, now existing or hereafter constructed at grade, or at the same or different levels, to be relocated or altered, or to be abolished." This section (66 PS §573) also provides that "the expense of the said construction, relocation, alterations, or abolition of any such crossing, shall be borne and paid, as hereinafter provided, by the public service company or companies or municipal corporations concerned, or by the Commonwealth, either severally or in such proper proportions as the commission may, after due notice and hearing, in due course, determine, unless the said proportions are mutually agreed upon and paid by those interested as aforesaid." The end, intent, and purpose of that section of the act was declared to be "that accidents may be prevented and the safety of the public promoted." 66 PS §571. The commission has the power, under this section of the Public Service Company Law, to order the reconstruction and relocation of the existing underpass, and to apportion the cost between the appellant, the municipal corporations concerned, and the Commonwealth.

The order of the commission was within its power and supported by the evidence, and is reasonable and in conformity with law.

Those conditions which may have brought about the necessity for a new underpass do not operate to relieve appellant. It is a question of providing for public safety by reasonable methods. The underpass built in 1911 may have been sufficient at that time; it is insufficient and perilous today. In order to prevent accidents and promote the safety of the public, the commission acted within its power, if the facts warranted, in ordering its reconstruction and in apportioning the cost thereof. Appellant's contention that it will receive no benefit

from the proposed construction is not convincing. The question of benefits is not involved. "It is the presence and ownership of the track involved, not any benefit conferred, which places liability on the railroad": *Lehigh Valley R. R. Co. v. P. S. C.*, 105 Pa. Superior Ct. 423, at page 428, 161 A. 422, at page 424.

Placing 40 per cent of the total cost of the improvement upon appellant is not unreasonable, as it is considerably less than the cost of the bridge structure alone, according to its own estimate. In *Pittsburgh, Bessemer & Lake Erie Railroad Co. v. P. S. C.*, 71 Pa. Superior Ct. 15, at page 19, this court said: "The commission, in the apportionment of the cost, cannot be limited to any fixed rule; all the factors which enter into a division of costs should be taken into consideration and carefully examined. It would be almost impossible for this court, exercising an appellate jurisdiction, to go into the minute details of all the questions presented in such issues and sit as an administrative body to determine what would be just. From the evidence submitted, the commission arrived at what they believed to be a fair ratio and ...... made the final order, part of which is now complained of. Any other division that we might suggest would be merely an expression of our opinion as to what would be proper and it is entitled to no greater weight than that of the commission's, appointed to hear and determine these matters."

Although the present bridge and underpass may have been constructed by appellant by order of the Court of Common Pleas of Northampton County, in 1911, it is not thereby relieved of liability to bear its portion of the cost of reconstruction. Those provisions of the Public Service Company Law which are applicable were enacted by virtue of the police power of the state; and, as we said in *Wilkes-Barre Railway Corporation v. P. S. C. et al.*, 124 Pa. Superior Ct. 362, at page 368, 188 A. 546, at page 548, "the lawful exercise of the police

power might take place any time and the parties concerned be required to pay their proper share." This, however, is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably. *Nashville, Chattanooga & St. Louis Railway v. Walters et al.,* 294 U. S. 405, 79 L. Ed. 949.

The Public Service Company Law has imposed on the commission the responsibility for determining what the public interest requires in this case and how it shall be accomplished. The new construction removes the elements of danger under which the present underpass is used; it substitutes a wider highway and driveway for one plainly too narrow; it removes the danger incident to vehicular traffic which now exists, as the present underpass is built at right angles to the general course of the highway and is approached at a considerable grade; it provides for improved drainage facilities and the elimination of slides; it makes provision for a 5-foot sidewalk along the south side of the underpass, which the present one lacks.

This case is to be distinguished from *Nashville, Chattanooga & St. Louis Railway v. Walters et al.,* supra, cited by appellant. In that case the Tennessee statute authorized the state highway commission, whenever a state highway crosses a railroad, to require the separation of grades, if, in its discretion, the elimination of any such grade crossing was necessary for the protection of persons traveling on any such highway or any such railroad, and, without conferring upon the commission any discretion as to the proportion of costs to be borne by the railroad, required the latter to pay in every case one-half of the total cost of the separation of grades. On appeal from an order of the trial court, enjoining the commission from attempting to enforce payment of one-half of the cost of eliminating a grade crossing, the Supreme Court of Tennessee declined to consider certain special facts and circumstances relied

upon by the railroad company, in the court below, as showing that the order and the statute as applied were arbitrary and unreasonable. In an opinion by Mr. Justice BRANDEIS, the United States Supreme Court reversed the judgment of the Supreme Court of Tennessee, and remanded the cause for further proceedings in order that the evidence relied upon by appellant should receive consideration. A far different situation obtains in the case at bar where the Public Service Company Law does not impose a fixed proportion of cost to be borne by the railroad company; and the order of the commission has been made, in the exercise of its administrative discretion, after a hearing of all relevant evidence upon which its order is based.

The order of the commission is affirmed, at the cost of the appellant.