Pennsylvania Department of Highways, Appellant, *v.* Pennsylvania Public Utility Commission.

Submitted April 16, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*Joseph J. Laws, John R. Rezzolla, Jr., Thomas C. Evans,* Counsel, *Phil H. Lewis,* Deputy Attorney General and *Robert E. Woodside,* Attorney General, for appellant.

*Albert E. Luttrell,* Assistant Counsel and *Lloyd S. Benjamin,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*Margaret M. Morrison,* for Pittsburgh Railways Co., intervenor, appellee.

OPINION BY HIRT, J., July 14, 1953:

The proceedings which gave rise to this appeal had their beginning in December 1951 when Pittsburgh Railways Company applied to the Public Utility Commission, under §202 of the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1122, for leave to abandon its street railway service on a portion of "Route 2—Etna" and "Route 3—Millvale" between the intersection of East Ohio Street and Troy Hill Road in the City of Pittsburgh, and the boroughs

of Etna and Millvale. Concurrently with the above applications the Railways Company also sought approval of its proposal to substitute buses for the existing street car service. The applications were all mutually contingent each upon the others and contemplated the approval of bus service supplying passenger transportation, over identical routes and at the same fares, as substituted facilities for the street railway service which it would supplant. The occasion which prompted the present applications was the action of the Pennsylvania Department of Highways in evidencing its intention to reconstruct parts of the highways involved in these proceedings. The excessive cost of relocating its tracks after improvement of the State highways, over and above the cost of total abandonment of street railway service, was a factor involved in inducing the Railways Company to make the change. Before the present applications were filed with the Public Utility Commission, the Highway Department had contracted for a part of the contemplated pavement reconstruction; performance of the contract however is still in abeyance pending the termination of this proceeding.

The applications were heard together, and in a consolidated order the Commission approved the abandonment of street railways as prayed for on Route 2—Etna and Route 3—Millvale upon the inauguration of motor bus service by the Railways Company, which was concurrently authorized by the Commission. The order was made upon a finding by the Commission, from the evidence before it, "that approval of the instant applications is necessary or proper for the service, accommodation, convenience or safety of the public". Section 203 of the Public Utility Law, supra, 66 PS §1123 provides that the Commission in granting a certificate of public convenience based upon a finding to

the above effect, "may impose such conditions as it may deem to be just and reasonable". On this authority the issue of certificates of public convenience evidencing approval of the above applications was made subject to conditions, in substance, to this effect: The Railways Company's poles and overhead construction, located within the limits of the public highways were to be removed at its expense; in the absence of controlling agreements with the municipalities involved, the Railways Company was directed to burn off the rail heads of tracks existing in concrete paving and to fill the resultant grooves with bituminous material; on highways paved with block stone the rails were to be removed and the disturbed areas repaved with cement-grouted block stone upon a restored concrete base; similarly, on brick pavements the rails were to be removed and the disturbed area repaved with brick on a concrete base; on unpaved highways with cinder surface, removal of the rails and restoration of the cinder surface were contemplated. Other conditions were imposed, but they are not material here.

The street railway routes involved in this proceeding extended over six miles of public road. Of twelve miles of trackage, measured in terms of single track, approximately 10.6 miles were upon State highways. The City of Pittsburgh did not object to the substituted service or the conditions imposed by the Commission on approval of abandonment. The Department of Highways was a party to the proceedings from their inception and, following the approval of the applications, petitioned the Commission for a modification of the conditions of its order. As to the area of East Ohio Street under contract for an entirely new pavement, the Department sought a modification of the order requiring the Railways Company on removal of its tracks to rebuild the entire track area *to conform with*

*the improvement of the flanks of the street under the specifications of the repaving contract.* As to a section of Butler Street in the Borough of Etna, the Department sought a modification of the order directing the Railways Company to restore the base of the entire area with concrete on removal of the tracks and to repave the surface with cement-grouted block stone. As to another part of Butler Street extending from Bridge Street to Spring Chalfant Crossing in Etna Borough, a section of 900 feet of railway track area which admittedly was in "fair to poor" condition, the Department sought a modification of the order requiring the Railways Company to restore the base as well as the surface in the trolley area. This is a section of Highway Route 72 as to which the Department has no immediate plans for reconstruction. The Commission refused the Department's petition for modification of its order in any respect; hence this appeal.

In imposing conditions on abandonment under sections 202 and 203 of the Public Utility Law, supra, the Commission is not limited to matters of service merely, but has the power to impose conditions in the interests of public safety as well. Conditions which may be imposed, however, must be reasonable and they cannot raise the standard of duty of the utility as fixed by law. Facilities abandoned by a utility in a street or highway, unless removed, may be dangerous to the public, and create a nuisance. Tracks of a railway in any street are an impairment of vehicular traffic and may create a serious hazard when wet. Under the common law it was the duty of a utility on abandonment of its service to remove its tracks and to restore the invaded area in the interest of the safety of the public. However, under §203 supra, the Commission, in the exercise of its discretion under existing circumstances, may require less than a full performance

of the duty formerly imposed on a street railway by the common law, on abandonment of its service. Accordingly the removal of the tracks in their entirety is not always essential, and frequently the full duty of the utility has been performed by the removal of rail heads only, when so ordered by the Commission, in abandonment proceedings, under the Public Utility Law. Since no franchises, contracts or agreements with municipal authorities relating to abandonment are here involved, the exercise of authority by the Commission, for the safety of the public, is limited only by the express or implied powers conferred by the legislature. Section 920 of the Public Utility Law, 66 PS §1360, has no application. These principles are settled law under our holdings in *West Penn Rwys. Co. v. Pa. P. U. C.,* 142 Pa. Superior Ct. 140, 15 A. 2d 539 and *West Penn Rwys. Co. v. Pa. P. U. C.,* 135 Pa. Superior Ct. 89, 4 A. 2d 545.

The Commission in its order of abandonment imposed conditions in effect requiring the Railways Company to do no more than to restore the track area to a condition comparable with the then surface of the roadways on the existing flanks. The order in this respect was in accordance with the Commission's general policy. Cf. *West Penn Rwys. Co. v. Pa. P. U. C.,* p. 97, supra, (135 Pa. Superior Ct. 89). There is competent evidence that, even in the sections of the State Highway, which are not now to be reconstructed, the condition of the ties and concrete base left in place will not result in a paving maintenance problem for 20 years. In the scope of the order the Commission did not exceed its authority under the Public Utility Law. The order is reasonable and there is ample support in the evidence for the conditions imposed. This court has repeatedly held that the conclusions of the Commission will not be disturbed unless they are capricious, arbi-

trary or so unreasonable as to amount to an error of law. We therefore may not reverse the present order of the Commission although based upon conflicting testimony; *Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.*, 170 Pa. Superior Ct. 411, 85 A. 2d 646; *Gannon v. Pa. P. U. C.*, 162 Pa. Superior Ct. 88, 56 A. 2d 366.

Order affirmed.