Pittsburgh Railways Company, Appellant, *v.*
Pennsylvania Public Utility Commission
(et al., Appellant).

418

Argued April 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Margaret M. Morrison,* for street railway company, appellant.

*T. M. Rutler,* with him *Joseph M. Gaydos,* Assistant County Solicitor, and *Maurice Louik,* County Solicitor, for Allegheny County, appellant.

*William A. Goichman,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Clarence W. Biggs, Jr.,* Solicitor, for Borough of Ingram, appellee.

OPINION BY WRIGHT, J., June 13, 1962:

We are here concerned with appeals by the Pittsburgh Railways Company (hereinafter referred to as Pittsburgh) and the County of Allegheny from an order of the Pennsylvania Public Utility Commission, dated October 9, 1961, as the result of an application

by Pittsburgh for approval of the alteration of the crossing where Center Street and two of Pittsburgh's tracks, located in the bed of the street, cross above the grade of two tracks of the Pennsylvania Railroad, all in the Borough of Ingram, Allegheny County. This application, docketed at A.86353, is one of sixteen similar applications for the approval of the abolition or alterations of steam railroad crossings, and of highway crossings above or below grade. These applications were filed concurrently with the application of Pittsburgh, docketed at A.86339, seeking approval of the abandonment of street railway services and facilities in that portion of its system operated between the downtown area and suburban municipalities to the west; and also concurrently with Pittsburgh's applications, docketed at A.76720, Folders 73 to 78, to substitute bus service. As a matter of procedure, these applications were consolidated for hearing, and the record is quite extensive. So far as the application at Docket A.86353 is concerned, the order of the Commission directs that the crossing be altered generally in accordance with a bridge plan prepared by the Borough of Ingram. The costs were allocated as follows: ten percent each to be paid by the Pennsylvania Railroad and the Borough of Ingram; twenty-five percent to be paid by the County of Allegheny; and fifty-five percent to be paid by Pittsburgh.

The bridge in question was erected in 1905 by Pittsburgh's predecessor, the Pittsburgh, Crafton & Mansfield Street Railway Company. At that time Center Street was known as Catherine Street. Prior to the construction of the bridge, the Borough of Ingram enacted an authorization ordinance, dated January 26, 1903, which provided that Pittsburgh's predecessor "shall erect and maintain a bridge which can be used for vehicle travel . . . and shall provide a walk, not less than four feet on each side of said bridge for foot pas-

sengers . . . and shall grade so much of said Catherine Street as shall be extended to the full width thereof when open". By an agreement, dated May 29, 1903, between Pittsburgh's predecessor and the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, predecessor of the Pennsylvania Railroad, it was stipulated that the bridge should be constructed and maintained solely at the expense of Pittsburgh's predecessor. We are therefore concerned in this case with a bridge which was built at the initiative of Pittsburgh's predecessor to accommodate its facilities, presently owned and maintained by Pittsburgh, and which Pittsburgh is obligated to maintain. It should be noted that the bridge will continue to be used by Pittsburgh's buses, and that the order complained of entirely relieves Pittsburgh from future maintenance.

During the course of the proceedings it became apparent that there was a substantial question as to the adequacy of the bridge structure, and its actual physical condition. The Commission became concerned about the possible existence of "a serious and hazardous condition for the traveling public". Consequently, under date of March 20, 1961, the record was opened and further hearings scheduled, upon due notice to all parties, "for the purpose of determining whether the aforesaid Catherine Street Bridge (Center Street) crossing, located in the Borough of Ingram, Allegheny County, should be altered, repaired, or reconstructed to effectuate the prevention of accidents and to promote the safety of the public and if so, what corrective measures and facilities are necessary at said crossing and what, if any, changes should be effectuated and for the purpose of determining the cost of providing and maintaining any or all of the corrective measures and facilities which may be found necessary at said crossing, and the portion of said costs which each of the parties named above should bear". Following the tak-

ing of testimony at two hearings, the Commission entered its order of October 9, 1961, from which the instant appeals have been taken.

On this appeal Pittsburgh advances four contentions, and the County of Allegheny advances two contentions. These six questions will be treated in chronological order. It is important to note at the outset that Pittsburgh's application was filed under Section 409 of the Public Utility Law. Act of May 28, 1937, P. L. 1053, 66 P.S. 1101 et seq. The pertinent portions of this section (66 P.S. 1179) are set forth in the footnote.[1] Both Pittsburgh and the County have argued these appeals primarily as though we were dealing with a simple abandonment case under Section 202 of the statute (66 P.S. 1122). The power of the Commission under the two sections is not the same. In either event,

---

[1] "(a)  No public utility, engaged in the transportation of passengers or property, shall, without prior order of the commission, construct its facilities across the facilities of any other such public utility or across any highway at grade or above or below grade, or at the same or different levels; . . . and, without like order, no such crossing heretofore or hereafter constructed shall be altered, relocated or abolished.

"(b) The commission is hereby vested with exclusive power . . . to determine and prescribe, by regulation or order, the points at which, and the manner in which, such crossing may be constructed, altered, relocated or abolished, and the manner and conditions in or under which such crossings shall be maintained, operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public.

"(c) Upon its own motion or upon complaint, the commission shall have exclusive power . . . to order any such crossing heretofore or hereafter constructed to be relocated or altered, or to be abolished upon such reasonable terms and condition, as shall be prescribed by the commission . . . The commission may order the work of construction, relocation, alteration, protection, or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth".

the scope of our review is within restricted limits. As set forth in Section 1107 of the statute (66 P.S. 1437): "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation. of constitutional rights". It is further provided in Section 1112 of the statute (66 P.S. 1442): "Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found". See *Duquesne Light Co. v. Pa. P. U. C.*, 176 Pa. Superior Ct. 568, 107 A. 2d 745.

Pittsburgh's first contention is that its application was limited in scope to alteration of the crossing by reason of the abandonment of its street railway tracks, and that the Commission "exceeded its legal jurisdiction and authority in ordering replacement of the decking and sidewalks and other improvements and repairs". It is Pittsburgh's position that the Commission can deal in the instant case only with abandonment of the street railway facilities, and that alteration of the crossing generally, apart from that portion involved in the removal of street railway facilities, is not properly before it. The very language of Section 409 refutes this argument. Nowhere in the section can there be found any support for Pittsburgh's contention. Although the jurisdiction of the Commission in crossing cases is not completely unlimited, when it attaches it is exclusive: *Borough of Bridgewater v. Pa. P. U. C.*, 181 Pa. Superior Ct. 84, 124 A. 2d 165. Each of the three cases relied upon by Pittsburgh involves an abandonment proceeding. See *West Penn Railways Co. v. Pa. P. U. C.*, 135 Pa. Superior Ct. 89, 4 A. 2d 545; *West Penn Railways Co. v. Pa. P. U. C.*, 142 Pa. Superior Ct. 140, 15 A. 2d 539; *Department of Highways v. Pa. P. U. C.*, 173 Pa. Superior Ct. 581, 98 A. 2d 199. These

cases hold that the duty of a street railway company on abandonment is confined to the removal of the rail facilities and the restoration of the area immediately disturbed. However, cases arising under abandonment proceedings do not control the present appeals. In *Philadelphia Suburban Water Co. v. Pa. P. U. C.*, 168 Pa. Superior Ct. 360, 78 A. 2d 46, we stated that such cases "do not apply to or in any wise delimit the broad powers conferred upon the Commission in railroad crossing proceedings".

Different considerations and principles are involved in crossing cases, wherein the Commission is concerned with maintaining the crossing as a whole in a proper condition for use by the public. The Commonwealth in the exercise of its police power has entrusted to the Public Utility Commission broad powers with respect to the crossings of facilities of utilities, and particularly with respect to the crossing of highways and railroads: *Tarentum Borough v. Pa. P. U. C.*, 171 Pa. Superior Ct. 156, 90 A. 2d 853. These powers have been referred to as extensive, *Pittsburgh Railways Co. v. Pa. P. U. C.*, 180 Pa. Superior Ct. 201, 119 A. 2d 804, comprehensive, *Schuylkill County v. P. S. C.*, 77 Pa. Superior Ct. 504, broad and exclusive, *Pennsylvania Railroad Co. v. Pa. P. U. C.*, 154 Pa. Superior Ct. 86, 35 A. 2d 588, exclusive and plenary, *Conshohocken Borough v. Pa. P. U. C.*, 135 Pa. Superior Ct. 295, 5 A. 2d 590. In such a proceeding the basis for the Commission's action is the public interest, *Pennsylvania Railroad Co. v. Pa. P. U. C.*, supra, 154 Pa. Superior Ct. 86, 35 A. 2d 588, and the standard to be applied is "the prevention of accidents and the promotion of the safety of the public". The order of the Commission in the case at bar contains the following statement here pertinent (italics supplied): "After reviewing all the facts in the case, we are of the opinion that, before Pittsburgh Railways can justly be relieved of its pres-

ent responsibility in respect to the maintenance of the existing bridge, all of its track facilities should be removed therefrom *and the bridge should be restored to a safe and satisfactory condition for future public use"*.

We perceive no merit in Pittsburgh's argument that there was no complaint, or Commission investigation, proceeding relative to the condition of the bridge instituted prior to and without relation to the instant application. We need point only to that portion of subparagraph (c) of Section 409 which authorizes the Commission to proceed in crossing cases upon its own motion. As previously indicated, this is in effect what transpired in the instant case under date of March 20, 1961, when the record was opened and further hearings were scheduled. While Pittsburgh's application stimulated the Commission to act, it by no means follows that the Commission's power was restricted by the application. If the form of an application could inhibit the Commission in the exercise of its statutory duties, the protection of the public interest would be transferred from the Commission to the individual applicant. It should perhaps be noted at this point that the Commission's ultimate order of October 9, 1961, called for (a) the removal of the existing street railway tracks, the bituminous wearing surface, timber deck, sidewalks and railings; and (b) the construction in lieu thereof of a new concrete roadway with necessary reinforcement of the supported steel roadway stringers, together with a provision for sidewalk slabs to replace the timber floor. In addition, the present iron railings are to be replaced with new lightweight aluminum railings, the approach slabs immediately adjacent to each end of the bridge are to be reconstructed to suit the new roadway, and repairs are to be made to portions of the concrete abutments found by the Commission to be unsafe.

Pittsburgh's final argument under its first contention is that the installation of a new and different type of flooring, which represents a large proportion of the construction ordered, is a community improvement for the benefit of the Borough of Ingram; and that this improvement does not arise out of or have any relation to the removal of Pittsburgh's facilities, and constitutes an unwarranted enlargement of the Commission's jurisdiction and authority over the crossing. We here observe that all alterations of bridge crossings in the public interest represent community improvements, and come within the Commission's function "to effectuate the prevention of accidents and the promotion of the safety of the public". The instant case does not involve the construction of any new highway constituting part of a general highway plan unrelated to the alteration of a crossing, and which would have been necessary apart therefrom. Cf. *Somerset County v. Pa. P. U. C.*, 132 Pa. Superior Ct. 585, 1 A. 2d 806; *Erie R. R. Co. v. P. S. C.*, 77 Pa. Superior Ct. 196. Virtually the same argument was rejected in *Lehigh Valley R. R. Co. v. P. S. C.*, 105 Pa. Superior Ct. 423, 161 A. 422, wherein it was urged that the construction of a bridge was purely a highway improvement for the benefit of the public generally. Similarly, in *Lehigh & New England R. R. Co. v. P. S. C.*, 126 Pa. Superior Ct. 565, 191 A. 380, in which an order of the Commission directing the construction of a new bridge was affirmed, we made the following pertinent statement: "Those conditions which may have brought about the necessity for a new underpass do not operate to relieve appellant. It is a question of providing for public safety by reasonable methods. The underpass built in 1911 may have been sufficient at that time; it is insufficient and perilous today. In order to prevent accidents and promote the safety of the public, the commission acted within its power, if the facts warranted, in ordering its reconstruction and

in apportioning the cost thereof". See also *Paradise Township v. P. S. C.*, 75 Pa. Superior Ct. 208; *Ligonier Valley R. R. Co. v. P. S. C.*, 83 Pa. Superior Ct. 502; *Conshohocken Borough v. Pa. P. U. C.*, supra, 135 Superior Ct. 295, 5 A. 2d 590; *Pennsylvania Railroad Co. v. Pa. P. U. C.*, supra, 154 Pa. Superior Ct. 86, 35 A. 2d 588. In the instant case, as previously noted, Pittsburgh was relieved of its responsibility to maintain the bridge, and this obligation was transferred to the Borough of Ingram. We feel that the Commission was fully warranted in requiring that the bridge should first be placed in a safe and sound condition, and that repair within the immediate future should be obviated. Cf. *Scott Township v. Pa. P. U. C.*, 188 Pa. Superior Ct. 174, 146 A. 2d 617.

Pittsburgh's second contention is as follows: "There is not substantial evidence, as required by law, to support the portions of the commission's order contested in this appeal". It should be emphasized in this connection that we do not exercise our independent judgment on the record, or weigh conflicting evidence: *Zurcher v. Pa. P. U. C.*, 173 Pa. Superior Ct. 343, 98 A. 2d 218. Our inquiry is directed to whether there is substantial evidence to support the Commission's action: *Pittsburgh & Lake Erie Railroad Co. v. Pa. P. U. C.*, 170 Pa. Superior Ct. 411, 85 A. 2d 646. In that case President Judge RHODES defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". It is competent and relevant evidence having rational probative force. Findings of fact by the Commission, supported by substantial evidence, are conclusive and may not be disturbed on appeal: *Aizen v. Pa. P. U. C.*, 163 Pa. Superior Ct. 305, 60 A. 2d 443.

We do not intend to burden this opinion with a detailed review of all the testimony offered at the many hearings. The Commission has adequately analyzed the

pertinent portions thereof in its orders of March 20, 1961, and October 9, 1961. There was a conflict in the opinions of the expert witnesses. It was the Commission's duty to harmonize this contradictory evidence and to determine which should be accepted: *Coastal Tank Lines, Inc. v. Pa. P. U. C.*, 189 Pa. Superior Ct. 482, 151 A. 2d 846. The credibility of the witnesses was for the Commission: *Horn's Motor Express v. Pa. P. U. C.*, 148 Pa. Superior Ct. 485, 26 A. 2d 346; *Garner v. Pa. P. U. C.*, 177 Pa. Superior Ct. 439, 110 A. 2d 907; *D. F. Bast, Inc. v. Pa. P. U. C.*, 397 Pa. 246, 154 A. 2d 505. The weight to be given to the evidence was similarly a matter for its determination: *City of Pittsburgh v. Pa. P. U. C.*, 174 Pa. Superior Ct. 4, 98 A. 2d 249; *Sherwood v. Pa. P. U. C.*, 177 Pa. Superior Ct. 6, 109 A. 2d 220; *Pennsylvania Railroad Co. v. Pa. P. U. C.*, 185 Pa. Superior Ct. 115, 138 A. 2d 279. As was the Commission, we were impressed by the testimony of F. H. Lovell, a bridge engineer of long and varied experience, who described the bridge and detailed its disrepair and inadequacy. He expressly stated that replacement of the deck of the bridge was necessary "to prevent accidents and promote safety of the public". This testimony was competent and relevant, and had rational probative force. The Commission was warranted in according predominant weight to it.

Pittsburgh's third contention is as follows: "The order of the commission is not supported by findings as required by law". Apparently the gravamen of this contention is that the Commission failed to attach significance to the fact that the bridge was rehabilitated in 1945, and did not refer to the testimony of Pittsburgh's witness in this connection. Complaint that the Commission's findings are insufficient should come from the court: *Pennsylvania Railroad Co. v. Pa. P. U. C.*, 181 Pa. Superior Ct. 343, 124 A. 2d 685. The following statement of Judge HIRT in *Borough of*

*Bridgewater v. Pa. P. U. C.*, supra, 181 Pa. Superior Ct. 84, 124 A. 2d 165, is here pertinent, and adequately answers Pittsburgh's contention: "So also, there is no merit in the complaint that the commission failed 'to make necessary findings of fact in supporting its conclusions'. The purpose of Section 1005 of the Act [66 P.S. 1395] which provides that the Commission shall make and file detailed findings with its opinion and order is 'to enable the court on appeal to determine the controverted question presented by the proceedings, and whether proper weight was given to the evidence'. The requirement is intended to be in aid of the Court . . . We have had no difficulty in informing ourselves of the questions presented in these appeals".

Pittsburgh's fourth and final contention is as follows: "The assessment of costs upon the applicant abandoning carrier as ordered by the Commission is not in conformity with law because not within the legal jurisdiction and authority of the Commission, and because it is arbitrary, unjust and unreasonable under the facts of this case as established of record". Pittsburgh argues that its "legal abandonment obligations" are limited to the removal of its utility facilities and the restoration of the area disturbed thereby, plus certain repairs to the bridge abutments which it agreed to undertake. Once again, Pittsburgh places reliance on *Department of Highways v. Pa. P. U. C.*, supra, 173 Pa. Superior Ct. 581, 98 A. 2d 199. We have already noted that the principles applicable in that case involving abandonment are not controlling in cases concerning crossings.

The duty of allocating costs is placed on the Commission, and its order in exercise of administrative discretion will not be reversed if reasonable and in conformity with the law: *Tarentum Borough v. Pa. P. U. C.*, supra, 171 Pa. Superior Ct. 156, 90 A. 2d 853. In apportioning costs the Commission is not limited to

any fixed rule, but all factors should be taken into consideration: *Department of Highways v. Pa. P. U. C.*, 179 Pa. Superior Ct. 376, 116 A. 2d 855. In *Erie Railroad Co. v. P. S. C.*, 271 Pa. 409, 114 A. 357, our Supreme Court said (italics supplied): "The law does not require the total expense to be prorated among the respective parties upon a percentage basis, therefore, the Commission may order the municipalities, etc., to pay the railroad company certain fixed sums and the latter to do the work, furnish the material and bear the expense necessary. *The only requirement is that the order be just and reasonable".*

Pittsburgh seeks to free itself from all future liability for a structure which it erected, owns, and is obligated to maintain. Moreover, it attempts to escape this responsibility at a time when the bridge is in need of major alterations. By the present order, instead of being held for the entire cost of restoring the bridge, Pittsburgh will bear only slightly more than one-half. Since it will no longer have the responsibility of maintaining the bridge, this would appear to be an eminently just and reasonable allocation. See *Lehigh & New England Railroad Co. v. P. S. C.*, supra, 126 Pa. Superior Ct. 565, 191 A. 380. As stated in *Pittsburgh, Bessemer & Lake Erie Railroad Co. v. P. S. C.*, 71 Pa. Superior Ct. 15: "It would be almost impossible for this court, exercising an appellate jurisdiction, to go into the minute details of all the questions presented in such issues and sit as an administrative body to determine what would be just. From the evidence submitted, the Commission arrived at what they believed to be a fair ratio and . . . made the final order, part of which is now complained of. Any other division that we might suggest would be merely an expression of our opinion as to what would be proper and it is entitled to no greater weight than that of the Commission's, appointed to hear and determine these matters".

We come now to the County's contentions, the first of which is thus stated: "The Pennsylvania Public Utility Commission exceeded its legal jurisdiction and authority in assessing certain costs to the County of Allegheny for the repair, alteration, maintenance, et cetera, of a bridge built and owned by the applicant company, which obligations for such repair, alterations, construction, et cetera, are included in and are the subject of an existing agreement between the applicant company and the local municipality". This contention is based on Section 411 of the statute (66 P.S. 1181) which provides, inter alia, that the expense of the construction, relocation, alteration, protection or abolition of any crossing shall be borne by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the Commission may determine, "unless such proportions are mutually agreed upon and paid by the interested parties". The County argues that the franchise agreement and ordinance binding Pittsburgh to repair and maintain the bridge, constitutes a mutual agreement under the terms of the statute, and that the Commission's order "is in derogation of, and an illegal attempt to alter, vary, or contradict existing contractual obligations". However, the County at the same time concedes that the greater portion of the expense involved is attributable to alteration and repair of the bridge generally.

In construing Section 411 of the statute it must be read in connection with Section 409: *Delaware River Port Authority v. Pa. P. U. C.*, 393 Pa. 639, 145 A. 2d 172. The obvious answer to the County's argument is that Section 411 is not intended to, and does not, limit the power of the Commission under Section 409 to make a proper order for the alteration of a crossing. Unless the costs incident thereto are agreed upon by all parties, as set forth in Section 411, the duty then devolves upon the Commission to fairly allocate them.

The franchise agreement in the present case provided that Pittsburgh should "maintain" the bridge. The Commission has now determined that, coincident with the removal of the tracks, a major alteration has become necessary. Since it clearly appears that there is no mutual agreement of the interested parties as to the division of the expense thereof, the Commission acted properly in making the allocation.

As does Pittsburgh, the County cites *West Penn Railways Co. v. Pa. P. U. C.,* supra, 142 Pa. Superior Ct. 140, 15 A. 2d 539. We have already pointed out that this case dealt solely with the question of abandonment under Section 202, and is not here controlling. The argument that the allocation of the costs in a crossing case is an illegal invasion of contractual obligations was invoked in *Wilkes-Barre Railway Corp. v. P. S. C.,* 124 Pa. Superior Ct. 362, 188 A. 546. There the county had entered into an agreement to maintain the bridge in question. In holding that the agreement did not operate to relieve the utility from a share of the cost of altering or changing the bridge, this Court said: "The provisions in the Public Service Company Law with relation to grade crossings were enacted by virtue of the police power of the state and such contracts as we are considering are held to have been made subject to the implied condition that the lawful exercise of the police power might take place any time and the parties concerned be required to pay their proper share". See also *Pennsylvania Railroad Co. v. Pa. P. U. C.,* supra, 154 Pa. Superior Ct. 86, 35 A. 2d 588.

The County's second contention is as follows: "Conceding arguendo the jurisdiction of the Commission, the assessment of costs upon the county as ordered is not in conformity with the law and is unjust and unreasonable under the facts of this case". It is argued that no County facilities are involved and that the County

will receive no benefit. The County asserts that the Commission made no reference to any existing dangerous condition, and that Pittsburgh and the Borough of Ingram are the only parties whose interests are served. To the contrary, the order of March 20, 1961, expressly refers to "a serious and hazardous condition for the traveling public", and the proceeding was opened for the purpose of going into that matter.

The responsibility to protect the public in crossing cases is not placed upon utilities alone, but may be required to be shared by cities, boroughs, townships and counties: *Pennsylvania Railroad Co. v. Pa. P. U. C.,* 136 Pa. Superior Ct. 1, 7 A. 2d 86. The County cites *Somerset County v. Pa. P. U. C.,* supra, 132 Pa. Superior Ct. 585, 1 A. 2d 806, but the ground for reversal in that case was the fact that the Commission had, in its order, embraced several miles of highway construction. As to the crossing itself, the imposition of a portion of the costs on the County of Somerset was approved in the following pertinent statement: "We find no merit in the argument of appellant that the county had no such 'concern' or 'interest' in the project as would warrant the commission in placing some part of the cost of the improvement on the county. Undoubtedly a county is such a municipality as may be 'concerned' or 'interested' in abolishing a grade crossing and providing a new crossing above grade as a substitute for the one abandoned . . . The relocation of the crossing resulted in a substantial local improvement and the benefits to the residents of the county were different from and in excess of those enjoyed by other users of the crossing". Similarly, in *Schuylkill County v. P. S. C.,* supra, 77 Pa. Superior Ct. 504, we said that a county "may also be vitally 'concerned' and 'interested' in the local benefit resulting by the substitution of a safe for a dangerous highway, for which it has as yet paid nothing . . . The inhabitants of the county

have a concern and interest that is at once direct and immediate in the use of the reconstructed crossing freed from the dangers risked by every user of the highway complained of".

The County cites *Department of Highways v. Pa. P. U. C.*, 190 Pa. Superior Ct. 1, 151 A. 2d 850, for the proposition that relative benefits are proper factors for consideration. In that case the question involved was the allocation of costs for water mains required to be relocated in connection with an over-all plan for a limited-access highway. As previously noted, the test of Commission jurisdiction in crossing cases under Section 409 is public interest: *Pennsylvania Railroad Co. v. Pa. P. U. C.*, supra, 154 Pa. Superior Ct. 86, 35 A. 2d 588. We can only point out that it was within the Commission's authority to weigh the evidence in the instant case, and to determine the amount which the County should contribute on the basis of benefit to the general public. The County stresses the fact that it chose not to participate in the hearings. As aptly stated in the Commission's brief: "It should not lie in the mouth of the County to use its own indifference and neglect as a basis for complaining that the record as to it is inadequate".

In summary, having made a painstaking review of this voluminous record, we have concluded that the Commission is not chargeable with error of law, and that its determination that the crossing should be altered, and the percentage allocation of the costs thereof, is supported by the evidence. We have not been persuaded that the action of the Commission was arbitrary, unjust, or unreasonable.

Order affirmed.