Pennsylvania Public Utility Commission *v.* Department of Transportation of the Commonwealth of Pennsylvania; Township of Upper Merion; County of Montgomery; Philadelphia Suburban Transportation Co.; The Pennsylvania Railroad Company; Philadelphia Suburban Water Co.; Philadelphia Electric Company; Sun Pipe Line Company; The Bell Telephone Company; and Philadelphia Gas Works Company.

Argued February 11, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER, and ROGERS.

*Gregory J. Dean,* with him *James E. Meneses,* for appellant.

*Dominic J. Ferraro,* Assistant counsel, with him *Edward Munce,* Acting Counsel, for appellee.

*Harris J. Latta, Jr.,* for amicus curiae, Penn Central Railroad.

*George J. McGonchie,* with him *Edward H. Huss,* for intervening appellee, Philadelphia Suburban Transportation Company.

OPINION BY JUDGE WILKINSON, April 29, 1971:

The issue before the Pennsylvania Public Utility Commission in this case was who should rebuild an overhead bridge on a township road in Upper Merion Township, Montgomery County, where the township road crossed the tracks of the Philadelphia Suburban Transportation Company, and in what proportion the costs should be distributed. Also involved, in addition to the township and Philadelphia Suburban Transportation Company, were the many other named respondents which were public utilities with installations on or in the neighborhood of the bridge that might be affected by the rebuilding, as well as the County of Montgomery and the Department of Transportation of the Commonwealth.

The problem came to the attention of the Public Utility Commission when it became necessary for the Public Utility Commission to order the bridge closed because of its obviously unsafe condition brought about by subterranean subsidence which had resulted from natural causes rather than fault on anyone's part or lack of maintenance.

This appeal was taken by the Township of Upper Merion from the Commission's order of September 9, 1968, which required the Township to provide all material and do all work necessary to reconstruct the bridge. The Township is to be reimbursed by the county for ten percent (10%) of the actual cost and by the Philadelphia Suburban Transportation Company for twenty-five percent (25%) of the actual cost, leaving the Township to bear sixty-five percent (65%) of the actual cost. No other respondent has appealed. However, the Penn Central Company, one of the respondents before

the Commission, has filed a brief as *Amicus Curiae*, requesting this Court to decide "to whom does a rail-highway structure belong?"

We will dispose of Penn Central's question first. This Court does not propose to answer abstract questtions which are not an issue before this Court. Penn Central does not claim title to the bridge nor has Penn Central been called upon to contribute directly to its reconstruction. Indeed, from the record it would appear that none of the respondents claim title. The superstructure of the bridge now being reconstructed was built and paid for in 1960 by Bethlehem Mines Corporation, albeit without Public Utility Commission consent or approval. That corporation is not even a party to this litigation.

Appellant, Upper Merion Township, has agreed, since January 24, 1968, when it filed an answer to the Commission's order of January 9, 1968, which instituted the investigation that resulted in the order appealed from, that the safety of the public required reconstruction of the bridge. Indeed, in the brief appellant filed in this Court, it agrees that it should participate in the cost of reconstruction, taking issue only with the percentage allocation: "It is interesting to note that the township in this matter does not and has never indicated that it should be completely free of any expense incident to the reconstruction of the bridge owned by PSTC. On the contrary, the township has never taken the position that all expenses incurred in the construction of the bridge should be borne by PSTC. It agreed that it is [an] 'interested' or 'concerned' party as set forth in the statute. The township charges, however, that the allocation of costs, sixty-five percent, to the township and twenty-five percent to the transportation company, is unwise, unfair and otherwise burdensome since it bears no relationship to the facts." (Appellant's brief, page 10.)

The Commission's authority in this matter is clear. It is not contested by any of the respondents. The only issue, as indicated above, is whether the Commission had substantial evidence on which to base its allocation of costs. We think it did. President Judge WRIGHT carefully analyzed the law in this field in the relatively recent case heavily relied upon by appellant, *Pittsburgh Railways Company vs. Pennsylvania Public Utility Commission*, 198 Pa. Super. 415, 182 A. 2d 80 (1962). In this opinion he states: "In apportioning costs, the Commission is not limited to any fixed rule, but all factors should be taken into consideration . . . . [O]ur Supreme Court said . . . *'The only requirement is that the order be just and reasonable.'*" 198 Pa. Super. 415, 429-30, 182 A. 2d 80, 86 (1962).

A careful review of the entire record from the original order of January 9, 1968, the eight Answers filed by the respective respondents on January 24, 26, 30, 31, February 1 (two filed), February 8, 9; the testimony of the hearing March 6, 1968; the order entered April 29, 1968, directing the Township to make a study and all other respondents to cooperate; the testimony taken at the hearing August 14, 1968; and the able opinion filed by the Commission September 9, 1968, reveals that the order from which this appeal is taken amply supports the Commission's action in fixing the Township's contribution at 65%. The record is replete with competent testimony to support the vital interest of the Township. The testimony shows that this bridge is essential for the proper police and fire protection of the area. It is used in a substantial amount by the industry of the area. The alternate route in use while the bridge was closed increased traffic on the already heavily travelled U. S. Route 202 and caused complaints from the residents of the area. *The Acting Township Engineer* testifed that within a 24-hour period, a mini-

mum of 800 to 1,000 light cars, 300 trucks and 15 school buses used this bridge!

It is significant that the township has not appealed from that part of the Commission's order that provides that after completion of the reconstruction, the Township shall have the entire burden of maintaining the entire superstructure of the bridge, including the wearing surface, the approaches and the drainage facilities. The Philadelphia Suburban Transportation Company is placed with the burden of maintaining the existing, and newly constructed bridge substructure units.

The record reveals that the Commission gave ample opportunity for all interested parties to appear and testify. In addition to representatives of the many respondents, representatives of industry and the Chamber of Commerce appeared. The Commission's order amply and accurately summarizes the testimony. We cannot conclude that its action was capricious or arbitrary or unsupported by the record.

We do not feel that appellant has carried its heavy burden of showing that the Commission's action was so unreasonable that it amounted to an error of law. *See Garner v. Pennsylvania Public Utility Commission,* 177 Pa. Super. 439, 110 A. 2d 907 (1955); *Pennsylvania Department of Highways v. Pennsylvania Public Utility Commission,* 173 Pa. Super. 581, 98 A. 2d 199 (1953).

Accordingly, the Commission's order of September 9, 1968, is affirmed.

_____

DISSENTING OPINION BY JUDGE MANDERINO:

We are concerned here with the question of who should pay the expenses of rebuilding an overhead bridge on a township road. The bridge in question carries Church Road in Upper Merion Township, Montgomery County, across the tracks of the Philadelphia Suburban Transportation Company (PSTC). The Pennsylvania Public Utility Commission has imposed

sixty-five percent of the cost of rebuilding the bridge on the Township, twenty-five percent on the PSTC and ten percent on Montgomery County.

The majority has affirmed the Commission's allocation on the basis that there was substantial evidence to support the allocation. The evidence essentially shows the heavy use of the bridge by Township residents. However, constant and heavy use of the bridge by Township residents does not justify the imposition on the Township of an obligation to bear sixty-five percent of the cost of rebuilding the bridge. A historical survey of the events leading up to this case will confirm the unfairness of the Commission's allocation.

It is undisputed that the Township road pre-existed the construction of the railroad tracks. The predecessor company of the PSTC constructed the original bridge at the time that company was putting in a high speed line from Philadelphia to Norristown. The bridge was built for the convenience of the railroad company so there would be no grade crossings on the high speed line. The Township never requested that the bridge be built and, in fact, had no need for such a bridge. Now the bridge must be rebuilt and Upper Merion Township finds itself in the position of being required to pay sixty-five percent of the costs of rebuilding a bridge built by a railroad company for its own benefit. This result is unconscionable.

In apportioning costs, the Public Utility Commission must take all factors into consideration. However, its order must be just and reasonable. *Pittsburgh Railways Company v. Pennsylvania Public Utility Commission,* 198 Pa. Super. 415, 182 A. 2d 80 (1962). The order in this case was neither just nor reasonable. The allocation of sixty-five percent of the expenses to the Township ignores the fact that the bridge was neither built at the request of the Township nor made necessary by any act of the Township. To say that any private com-

pany can come into a municipality, replace a municipal road with a bridge for the convenience of the company, and then place the burden of maintaining the bridge on the municipality is grossly unfair. Upper Merion Township would never have been faced with the problem it now has if the railroad company had not put in its high speed line.

The Commission's order in this case is not substantiated by the evidence. The fact that the bridge is substantially used by the Township does not warrant the present allocation. It is only natural that the bridge is heavily used by the Township. It carries a Township road across the railroad tracks. But the fact remains that the Township would have had no need for this bridge had the railroad company not constructed a high speed line across the Township road. This fact should have been given heavy consideration by the Commission. Without such consideration, the Commission's order is arbitrary, unjust and unreasonable.

Allocations (as legislatively mandated) in cases such as the present one, have frequently been determined on an *ad hoc* basis. The Public Utility Commission must be guided by rational standards consistently applied when determining how expenses are to be shared. Without such guidelines, the Commission's orders can only be arbitrary and questions such as the one before us now will continue to plague the courts. Meaningful judicial review is not possible without measuring expense allocations against standards applied consistently from case to case. Otherwise, we would be confronted with an unconstitutional exercise of authority delegated by the legislature. Common carriers, as well as municipalities, are entitled to know why their share of expenses in a particular case differs from the expense burden imposed upon other municipalities and other common carriers in other cases. The Commission, rather than this court, is entitled to es-

tablish proper allocation standards which must then be applied with a degree of reasonable consistency from case to case. Otherwise, discrimination may result and proper judicial review becomes impossible.

I would reverse the order of the Public Utility Commission and remand this case to the Commission directing new expense allocations, backed up by reasonable standards which remain consistent from one case to another.