## Pennsylvania Labor Relations Board v. Delaware County Community College

*D. Barry Gibbons,* for appellant.
*Markowitz & Kirschner,* for intervenor.
*James L. Crawford,* for Pennsylvania Labor Relations Board.

WRIGHT, *J.,* October 2, 1975—This case comes before this court on appeal by Delaware County Community College (hereinafter referred to as "college") from the dismissal of its exceptions to the final order of the Pennsylvania Labor Relations Board (hereinafter referred to as "board") and its certification of the composition of the faculty bargaining unit. The formation of the bargaining unit was accomplished pursuant to the Public Employee Relations Act of July 23, 1970, P. L. 563 (No. 195), 43 PS §1101.101, et seq. (hereinafter referred to as the "act"). A petition for representation was filed with the board on November 15, 1973, by the Delaware County Community College Association of Higher Education, PSEA/NEA (hereinafter referred to as the "union"), alleging that it represented 30 percent or more of certain employes of the college. In consequence thereof, the union requested an appropriate hearing and order for election, pursuant to the act.

Hearings were duly conducted on January 28, February 7, and February 22, 1974,[1] before a hearing examiner of the board. On April 24, 1974, the board issued its order and notice of election, directing that an election take place on May 9, 1974, among the employes of the college, to ascertain the exclusive representative of such employes, if any, to be selected. The required election was held, after which, on June 6, 1974, exceptions were filed by the college to the board's nisi order of certification, dated May 22, 1974, the order certifying the union as the exclusive representative. Oral argument on the exceptions was conducted before the board on July 31, 1974. The exceptions were dismissed per order of the board on August 30, 1974, and a final order of certification was issued. This appeal by the college followed.

The central issue on appeal is the composition of the bargaining unit, specifically the listing of certain individuals certified by the board as eligible to vote in the election held on May 9, 1974. The college contends that the board erroneously included in the bargaining unit two "instructional coordinators" or "supervisors" and four "non-professional employees."[2] It argues that the job description and job function of these employes place them in a category of those jobs which are to be excluded from

---

1. The college states that the third and final hearing was held on March 22, 1974. The significance of the dates of the sequence of events is discussed in a subsequent portion of this opinion.

2. It is to be noted that none of the parties to this action challenges the election and results thereof. Even if six votes (those votes challenged, pertaining to the six individuals herein discussed) were deducted from the number of affirmative votes cast for union representation (51 affirmative votes) a majority vote would still have been cast. (18 votes were cast for "No Representative".)

the bargaining unit under law. Additionally, the college argues that the adjudication by the board was not based upon substantial evidence.

The scope of our judicial review is defined by the act in section 1101.1502, as follows:

"Any person aggrieved by a final order of the board. . . certifying or refusing to certify a collective bargaining agent of employes in any representation case, may obtain a review of such order in the court of common pleas of any county where the unfair practice in question was alleged to have been engaged in, or wherein such person or employer in a representation case resides or transacts business, or in the instance of Commonwealth employes in the Commonwealth Court, as the case may be, by filing in such court, within thirty days after the final order has been issued by the board, a written petition praying that the order of the board be modified or set aside. . . . Upon such filing, the court shall proceed in the same manner as in the case of an application by the board under section 1501, and shall have the same exclusive jurisdiction to . . . enter a decree enforcing, modifying, and enforcing as so modified, or setting aside, in whole or in part, the order of the board, and *findings of the board as to the facts, if supported by substantial and legally credible evidence, shall in like manner be conclusive* . . .": 43 PS §1101.1502 (Emphasis supplied).

The phrase "substantial evidence" has been judicially construed as "such relevant evidence as a reasonable mind can accept as adequate to support a conclusion." Parago v. Department of Public Welfare, 6 Pa. Commonwealth Ct. 16, 20, 291 A. 2d 923 (1972), citing Pittsburgh Railways Company v. Pennsylvania Public Utility Commission, 198 Pa. Superior Ct. 415, 182 A. 2d 80 (1962). For

purposes of administrative review, it must be enough to justify, if trial were by a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury: Fishburn v. Finch, 313 F. Supp. 838 (E.D.Pa., 1970), affirmed sub. nom. Fishburn v. Gardner 452 F.2d 1004 (3d Cir., 1971). Additionally, it must be remembered that the reviewing court is not to substitute its judgment for that of the board concerning the question of designation of the appropriate bargaining unit. Rather, it is to determine whether the evidence in support of the board's decision is substantial and legally credible, and whether the board's conclusions are "unreasonable, arbitrary or illegal": Pennsylvania Labor Relations Board v. Butz, 411 Pa. 360, 192 A. 2d 707 (1963).

In the Butz opinion, Justice Jones indicated that a reviewing court is always hesitant to upset the factual findings of a jury or a judge because of the "difficulty of ascertaining from the bare words of the record the nuances that might well overturn any credit that might be given to the spoken word. Such is particularly true in the review of findings of administrative tribunals, where the law has entrusted the ascertainment of the facts to persons presumably selected for their experience and expertise who are, as Justice (now Chief Justice) Bell pointed out in Delaware County National Bank v. Campbell, 378 Pa. 311, 328, 106 A.2d 416, better qualified than any court to make a factual finding on a subject within their field." 411 Pa., at 375, 192 A.2d, at 715.

The first two employees included in the bargaining unit, to which the college takes exception, are Stephen Starcheski, who occupies the position of "Coordinator of Instructional Media," and Jack Moyer, who occupies the position of "Coordinator of

Library Services." Are these employes "supervisors" within the meaning of the Pennsylvania Public Employee Relations Act? The term is defined in section 1101.301(6) as follows:

" 'Supervisor' means any individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employes or responsibility to direct them or adjust their grievances; or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment." 43 PS §1101.-301(6).

The job description of "Coordinator of Instructional Media" is found in Exhibit E-21 and provides as follows:

"The Coordinator is responsible to the Director of Instructional Resources for individual remedial and developmental training in skills supportive of specific subject matter courses.

"He shall be responsible for:

"1. Coordinating the activities of all professional staff members working in or for the Learning Center.

"2. Supervising the non-contract staff of the Learning Center.

"3. Providing for in-service education of both professional and non-professional personnel.

"4. Directing all research projects conducted by the Learning Center and cooperatively develop those to be conducted within the Center by other departments.

"5. Reviewing requisitions and control all materials, both hardware and software, used in the Learning Center.

"6. Establishing cooperative and effective working relationships with instructional houses as well as the library and instructional media offices.

"7. Working closely with the Office of Student Personnel to ensure an educational environment most suitable for the student's individual needs and interests.

"8. Accepting responsibility for recommending texts and materials which will foster an effective total reading awareness, where the selection of materials involves reading consideration.

"9. Continuing the established professional relationships with the Delaware County Reading Association and other significant professional groups in the field.

"10. Such other duties and assignments as designated by the Director of Instructional Resources."

Testimony was produced by the college indicating that the individual holding the position of coordinator of instructional media had four persons reporting to him, has the responsibility of recommending hiring and firing, evaluating the reporting personnel, and recommending pay increases, and does not have instructional duties. No significant cross-examination on this position is felt to be of import.

The job description of "Coordinator of Library Services" is found in Exhibit E-18 and provides as follows:

"The Librarian reports to the Director of Instructional Resources from whom he receives instruction and supervision.

"He is responsible to:

"1. Recommend and administer library policy, regulations, and procedures.

"2. Develop the book and audio-visual software

collection. Select, acquire, catalog and distribute needed items.

"3. Maintain close relationship with administrators, faculty, and students to learn their library needs.

"4. Prepare reports, surveys, studies, and analyses of library services.

"5. Select, train, and supervise professional and non-professional staff.

"6. Supervise physical condition of library and security of its contents.

"7. Requisition necessary supplies and equipment and account for the expenditure of money.

"8. Cooperate with other librarians regarding common projects of value to the college.

"9. Inform users of library resources and services.

"10. Provide reference and inter-library loan services to the college.

"11. In cooperation with the Instructional Media Department:

"a. Provide viewing and listening facilities for audio-visual software.

"b. Assist faculty to enrich the presentation and contents of their instruction."

Testimony was again produced by the college indicating that the individual holding the position of Coordinator of Library Services supervises three professional librarians and four clerical personnel, has power to recommend transfer and the responsibility of hiring and firing and promoting the reporting personnel.

Additional testimony was elicited with respect to the overall use of "independent judgment" required of the personnel occupying these two positions, e.g., scheduling of work assignments, review-

ing and evaluating work quality, etc. The type of job description responsibilities and attendant job-related functions described above have been held to have conferred "supervisory status" upon such individuals: Teamsters Local 612 v. N.L.R.B., 381 U.S. 903 (1965); N.L.R.B. v. Inland Motor Corp., 322 F.2d 457 (4th Cir. 1963); Employees of Temple University, PERA-R-1123-E and PERA-R-1137-E, 3 PPER 209 (1973).

The Pennsylvania Labor Relations Board, in its order and notice of election, held as a conclusion of law as follows:

"5.That the House Chairmen and Area Coordinators are supervisors within the meaning of Section 301 (6) of the Act."

Despite the conclusion of law, these individuals were placed upon the list of "eligible voters" and were allowed to take part in the election. We believe that the inclusion was erroneous. We must, therefore, reverse the board as to that part of its decision relating to such inclusion.

It should be noted at this point that the board's findings of fact, included in its order and notice of election, make no reference to the hearing held on February 22, 1974. The board does refer to such date in the opening paragraphs of the order. The college, in support of its position, seeks to advise us that the hearing, in fact, took place on March 22, 1974, and that the board entered its order without the benefit of the transcribed notes. The college also argues that "most" of its testimony was produced at the third and final hearing. Although we might advise the board that the better practice would be to await the transcription of the notes of testimony before making its decision and writing its order, we do not hold that it has prejudiced the

college; nor do we hold that it was not procedurally competent so to act. Therefore, it does not become overly significant as to the date of the hearing being either February 22 or March 22, 1974.

With respect to the inclusion of four "non-professional employees" within the bargaining unit, we hold that the board did not err in including the subject individuals, Linda Kipp, Renee Kirk, Roger McCabe and Victor Tenaglia. They are all on the faculty salary scale and are on the faculty mailing list. Their positions are those of Assistant Instructor, Library, Natural and Applied Sciences, Associate Instructor, and Technician. The notes of testimony cited above provide evidence that the individuals are in a position alongside of others holding advanced degrees, assigning work, working in an area supportive of an instructional program, preparing classroom graphic materials and having some instructional duties.

Although it must be recognized that the above individuals do not necessarily hold advanced degrees, it must also be recognized that their jobs are not merely clerical in nature, nor routine. There was enough produced in the record to afford these individuals with indicia of the faculty rank, payment, benefits and general classification. After a thorough and exhaustive review of the record, we conclude that the board did not err in including these individuals within the bargaining unit. We also find that the evidence is well supportive of the board's decision, as to these individuals: Pennsylvania Labor Relations Board v. Butz, supra.

We, therefore, enter the following

## ORDER

And now, October 2, 1975, it is hereby ordered and decreed that the final order of the Pennsylvania

Labor Relations Board, insofar as it pertains to the inclusion in the bargaining unit of Instructional Coordinators, Stephen Starcheski and Jack Moyer, is reversed, and they are excluded from the bargaining unit; in all other respects, consistent with this opinion, the board's final order is hereby affirmed.